THE STATE OF NEW JERSEY, DEFENDANT IN ERROR, v. CHARLES CAPAWANNA, PLAINTIFF IN ERROR.

Argued January 19, 1937—Decided April 19, 1937.

Before BROGAN, CHIEF JUSTICE, and Justices CASE and PERSKIE.

For the defendant in error, *William A. Wachenfeld,* prosecutor of the Pleas; *Michael Breitkopf,* assistant prosecutor, and *C. William Caruso,* special assistant prosecutor and legal assistant.

For the plaintiff in error, *Joseph C. Cassini*.

BROGAN, CHIEF JUSTICE. The plaintiff in error, Charles Capawanna, was found guilty upon an indictment containing two counts, one for assault and battery, and the other for atrocious assault and battery, in the Essex County Court of Quarter Sessions.

The testimony offered by the state tended to show that Capawanna had seriously injured the complaining witness. He struck him several times with his fists, breaking his jawbone in two places, dislodging his teeth in the area of the fractures so that they hung loose by a shred of flesh, and breaking the skin below the left eye.

The plaintiff in error presents seventeen assignments of error and specifies eighteen causes for reversal. Many of the grounds upon which a reversal is sought are not available to the plaintiff in error. Taking the points as they are submitted in his brief, our view is that those designated as numbers 1, 2, 5, 6, 11, 14, 15 and 18 are of such class, inasmuch as under these points, either singly or in groups, it is argued that the court failed to instruct the jury in one or more particulars, which counsel now argues should have been presented in the charge. We consider it settled that the failure to charge a proposition, even though applicable to the facts in the case, cannot be made the basis of an assignment of error in the absence of a specific request to so charge. *State* v. *Barone*, 96 *N. J. L.* 417; *State* v. *Larsen*, 105 *Id.* 266. Here no request to charge whatever was submitted to the trial court, nor was any complaint made by counsel, when the charge was concluded, as to what the trial court said in its charge, or failed to say.

It might not be amiss to state there is no duty upon the trial court in a criminal case to charge the jury at all unless there be a request to do so. The court is not obliged to define the crime and may send the case to the jury for consideration without any instruction. *State* v. *Geltzeiler et al.*, 2 *N. J. Mis. R.* 1106; *affirmed*, 101 *N. J. L.* 415; *People* v. *Gray*, 5 *Wend.* 288; *State* v. *Ross*, 247 *Pac. Rep.* 1149; *State* v.

*Haines,* 103 *N. J. L.* 534. As to the rule in civil cases, compare *Rowland* v. *Wunderlick,* 113 *Id.* 223. *Hartwyk* v. *Shea,* 114 *Id.* 235; *Kruschka* v. *Konvitz,* 13 *N. J. Mis. R.* 299.

It is next argued, as we understand the point made by the plaintiff in error, that the court erred in permitting the jury to determine that there was proof in the case which would sustain a finding that an atrocious assault and battery had been committed. Under this heading it is argued that an atrocious assault and battery cannot be done unless the assault and battery be accomplished by the use of a weapon or implement of some kind. If such was the common law requisite, it has been changed by our statute which contains no such requirement (section 113 of the Crimes act). In fact, the term, "atrocious assault and battery" so far as we recollect, was unknown at common law. Such offenses, serious, outrageous or cruel assaults and batteries, were classed as "aggravated" and were delineated with particularity as misdemeanors, felonies, &c., according to their gravity. But our statute, *supra,* imports, in our view, its own definition of atrocious assault and battery, reading as it does, thus: "* * * any person who shall commit an atrocious assault and battery, by maiming or wounding another, shall be guilty of a high misdemeanor." We take this to mean that an assault and battery, savage and cruel in character, which results in a maiming or wounding, amounts to an atrocious assault and battery.

Very little has been said in our cases in definition of the term, probably because the meaning is rather obvious, but our Court of Errors and Appeals has approved this statement: "An atrocious assault and battery is by maiming and wounding." *State* v. *Slaw,* 97 *N. J. L.* 349; also *Cf. State* v. *Lambertino,* 13 *N. J. Mis. R.* 687.

There is nothing in the statute, *supra,* requiring that the maiming or wounding must be accomplished by the use of a weapon or implement. It should also be noticed, in passing, that the statutory provision is in the disjunctive so that any grave or cruel assault and battery may be atrocious which results in the maiming *or* wounding of another. It cannot

be denied that the complaining witness was wounded. The definition of "wound" is as follows: "A solution of the natural continuity of any of the tissues of the body." *Taylor, Med. Jurispr.* "In jurisprudence a wound may be said to exist even if there is no effusion of blood or severing of the skin. No question is raised as to the nature of the tissue damaged, be it skin and appendages, bone, joint or internal organ; * * *." 2 *Bouv. Dict. (Unabridged, Rawle's 3d Rev.)*, 3496. A wound is also defined as "any injury to the person by which the skin is broken, either internally or externally." 5 *C. J.* 741. From these considerations, we conclude that where the maiming or wounding is done by an assault and battery that is savagely brutal or outrageously or inhumanly cruel or violent, it amounts to an atrocious assault and battery within the intendment of our law. The argument, therefore, that there was no evidence to support the charge that an atrocious assault and battery was committed because there was no wounding, is without substance. Manifestly, there was such evidence. The skin was broken on the face of the person assaulted; he bled from the mouth when his teeth were dislodged and, without these, the breaking of the jaw-bone, clearly, under the definitions, amounted to a wounding.

It is also argued that the trial court fell into error in admitting into evidence, over objection, an X-ray photograph showing the fractures in the jaw of the complaining witness. It appears that at the time these injuries were inflicted, the doctor, who testified in the case, was an interne connected with the Orange Memorial Hospital. He was called upon at the time to render first aid and subsequently he assisted in treating the injured person for the three days that he remained in the hospital. The witness neither made the X-ray picture nor was it made under his direction and for his use, but he consulted the picture to confirm his first diagnosis and made use of it in treating the patient. Under these circumstances, it was erroneous to have admitted the photograph into evidence under the rule established in this state. "The rule is that if the correctness of the X-ray photographs is established

by the testimony of the person making them, or if they were identified by the surgeon under whose general direction and for whose use they were made, and by whom they were used in his diagnosis of bodily injury, they were admissible in evidence." *Robinson* v. *Payne,* 99 *N. J. L.* 135, 143; *Greco* v. *Schmidt,* 101 *Id.* 554. The error was not harmful enough to bring about a reversal. In our view, it was harmless. It was cumulative evidence only of proof that was already in the case by the testimony of others.

There was a plenitude of evidence in the case that the complaining witness had had his jaw fractured by a blow of the defendant's fist. The condition disclosed by the X-ray photograph had already been fully stated and pointed out in detail on the picture itself by this medical witness and without objection on the part of the defendant. The plaintiff in error did not deny that he had struck the complaining witness and caused the injuries. We therefore think there is no real merit in this complaint.

The remaining points complain, in a general way, about what the court said, or failed to say, in its charge to the jury. This phase of the argument made by the plaintiff in error has been sufficiently treated above and requires no further comment.

Lastly it is argued that the verdict was contrary to the weight of the evidence. Our reading of the testimony convinces us that there was ample evidence to support the jury's finding and that the verdict, in all the circumstances, was justified.

The judgment will be affirmed.